## SUPREME COURT.

FANNIE P. COTTLE, appellant, agt. LEVINUS VANDERHEYDEN, general guardian of CHARLES L. PETREE, a minor, respondent.

An adult married daughter is entitled to *administration* of her father's estate, in preference to the guardian of her brother, the minor son of the intestate.
*Guardians* should only be entitled to letters of administration, in the event there is no adult relative who is competent.

*Fourth Judicial Department.*
*General term at Buffalo, first Monday of June,* 1870.
*Present,* Hon. JOSEPH MULLIN, *Presiding justice,* Hon. THOMAS A. JOHNSON, *and* Hon. JOHN L. TALCOTT, *Associate justices.*

APPEAL from an order of the surrogate of Herkimer county, appointing the respondent, Levinus Vanderheyden, general guardian of Charles L. Petree, a minor, as administrator of the estate of Joram Petree, deceased.

On the 16th day of October, 1869, Joram Petree died at Little Falls, Herkimer county, his place of residence, intestate. He left no widow. His next of kin entitled to his estate were, a daughter, Fannie P. Cottle, wife of O. O. Cottle of Buffalo, and a son, Charles L. Petree of Little Falls. The daughter was upwards of twenty-one years of age; the son was a minor, seventeen years of age.

On the 9th day of December, 1869, the daughter filed her petition with the surrogate of Herkimer county for letters of administration upon her father's estate.

Levinus Vanderheyden, a resident of the city of Troy, having procured himself to be appointed general guardian

of the minor son, Charles L. Petree, notified the surrogate that he should claim the administration, and requested the surrogate not to grant letters to the daughter, and filed his petition, upon which a citation was issued to the daughter, requiring her to show. cause why administration should not be granted to him, Levinius Vanderheyden, as general guardian of the minor son of the intestate. On the return day of the citation, the daughter appeared before the surrogate and objected to the granting of administration to the guardian, and claimed the administration of her father's estate in her own right; and insisted that she, as the child, was entitled to a preference over the respondent, who was only guardian of a minor child of the intestate.

The surrogate decided· that a guardian of a minor son was entitled to administration in preference to a daughter of full age, and. made an order granting administration to the guardian of the minor son.

From such order, the daughter, Fannie P. Cottle, appealed to the supreme court.

O. O. Cottle, *for appellant.*

This is an appeal from an order or orders of the surrogate of Herkimer county, in respect to the administration of the estate of Joram Petree, deceased.

On the 16th day of October, 1869, Joram Petree died intestate, leaving no widow, and leaving only two children, the appellant, his daughter, of the age of twenty-seven years, and one son, a minor, of the age of about seventeen years; an adult sister and minor brother.

The daughter, being of full age and competent in her own right to administer upon her father's estate, on the 9th day of December, 1869, filed her petition for letters of administration and complied with all the requirements of the statute, including the execution of a proper bond and tender of the surrogate's fees.

The surrogate delayed the issuing of letters until the respondent, a stranger to the blood and estate of the intestate, through influences which do not appear from the -return, became possessed of the minor brother of the appellant.

Having as guardian secured the possession of the minor brother, on the 17th day of January, 1870, he filed a petition to obtain possession of the estate as administrator, in hostility to the daughter, and procured a citation to be issued. The daughter appeared on the return day of the citation and set up her prior proceedings before the surrogate, as a bar to the proceedings of the respondent. She also claimed the right of administration for herself, and offered if the surrogate decided that she was not in law entitled to priority to establish the incompetency of the respondent by evidence. The surrogate postponed his decision of the legal questions raised by the appellant till the 14th day of March, 1870, when he directed the entry of an order appointing the respondent administrator, thereby overruling all of the objections of the appellant and rendering her proceedings to obtain administration of her father's estate ineffectual.

The appellant immediately appealed to this court by service of notice of appeal and filing the requisite bond and stayed the issuing of letters of administration.

I. The appellant, being the only adult child of the intestate and there being no widow, was entitled to administration in preference to every other person. (*R. S. Part* 2 *Ch.* 6 *Title* 2, *Sec.* 27, 32, & 33; *Wickwire* agt. *Chapman,* 15 *Barb.* 302, 304; *Cluett* agt. *Mattice,* 43 *Barb.* 417 420; *Laws of N. Y.,* 1867, *Vol.* 2, *p.* 1927.)

The person entitled to a preference in administration cannot be excluded from her right, except in the cases enumerated in the statute. (*Harrison* agt. *McMahon* 1 *Bradf. Surrog. R.,* 283; *Coope* agt. *Lowerre,* 1 *Barb. Ch. R.,* 45; *McGregor* agt. *McGregor,* 1 *Keyes,* 133; *s. c.,* 33 *How.,* 456.)

The appellant was entitled to be appointed administratrix on her own petition without any citation to any person. (*Cobb* agt. *Manchester*, 37 *Barb.*, 192.)

Married women are capable of acting as administratrixes as though they were single women. (*Laws of N. Y.*, 1867, *Vol.* 2, *p.* 1927.)

It is believed that the foregoing establish the right of the appellant to a reversal of the surrogate's decision and to a decree directing her appointment as administratrix; but as a contrary and erroneous opinion has been entertained by some inferior tribunals, it is hoped that this court, by its decision in this case, will put an end to the great inconvenience and injuries resulting to persons and estates arising from strangers seizing upon estates by means of an appointment as guardian of some child on whom they may by chance be able to impose, so long as there may be an adult entitled to share in the estate and competent to administer.

To enable us the better to understand the statute I refer to the state of the law as it existed prior to the Revised Statutes.

Prior to the time of Henry VIII. the clergy seized upon estates under a claim of right to administer, and history informs us of the result to the estate. *Taylor* agt. *Delancy*, (2 *Caines' Cases* 149,) shows that our statute of February 14, 1787, was taken from 21st Henry VIII, which secured the right of administration to the next of kin, and remedied the enormous evils resulting from administrations by strangers, by giving the right to the widow or next of kin, if they would accept the same.

Our statute of February, 14, 1787, (*Chap.* 19,) provides "that where any person dieth intestate, the widow or next of kin, or any of them, of the deceased person, if they, or either of them, will accept the same, and if not, some other proper person or persons shall be deputed to administer the goods of the intestate."

And chap. 38 of the laws of New York, passed February

20th, 1787, is substantially the same in effect but expressed in more modern language.

The attention of the court is particularly called to the following preamble and statute, viz.: Chap. 35 of laws of New York, passed March 23, 1792, in its preamble recites:

" Whereas administrations have been frequently granted in this state, upon the mere suggestion of the party applying for the same, without due proof of the death of the person upon whose estate they are granted; and it has happened that administrations have been granted upon the estates of persons who were then living and residing within this state, and administrations are frequently granted to persons *in no wise related to the intestate, and who procure administrations only with a view of appropriating the estates of intestates to their own use* FROM WHICH PRACTICES GREAT INCONVENIENCES ARE LIKELY TO ENSUE."

For remedy whereof,

I. Be it enacted, &c., that no letters of administration shall be granted, &c., until due proof be made before the said judge or surrogate, to his satisfaction that such person is dead and died intestate.

II. That when application is made for letters of administration upon the estate, &c., of any person dying intestate, by *any person or persons not entitled* to the same as NEXT OF KIN TO THE INTESTATE, the judge of the court of probates, or surrogate, to whom such application shall be made, shall, before the granting of the administration, issue a citation *to the next of kin to the intestate*, summoning them to appear and show cause, &c.

Thus it be will be seen that at an early period of the existence of our state, the evils arising from appointing strangers administrators, had been so great as to attract the attention of the legislature and compel them to provide a remedy, which they happily did, by compelling the surrogate to warn the next of kin of the danger, and notify them to claim and protect their right.

Is the evil any less where persons, strangers, obtain guardianships of minors for the purpose of securing the administrations of estates "with a view of appropriating them to their own use"?

The statute of March 27, 1801, chap, 77 is the next one, but does not materially change the law upon this question. *(See Kent & Radcliff's edition revised, and Session Laws, Vol. 1, p. 217–219, 2d edition.)*

These provisions are substantially preserved in the Revised Laws of 1813. *(See act passed April 3, 1813, Vol. 1, p. 445.)*

Down to the time the Revised Statutes went into force there never had been a law which recognized the right to appoint a guardian as administrator under any circumstances.

I have examined the statutes of a large number of the United States, and the laws of England, and find that there does not exist any authority anywhere, (except such as may be found in our Revised Statutes,) for the appointment of a guardian as administrator of the estate of an intestate.

Therefore, the provision of the Revised Statutes giving a guardian any place at all was an innovation and should be closely scanned to see how far the legislature intended to alter the pre-existing law.

The guardian may still be a stranger to the blood and estate of the intestate, and the fact that he has as a preliminary, swallowed a minor and his private estate, may not diminish his capacity as administrator for consuming the intestate's estate. Though he may have succeeded in getting possesion of a minor, body, soul and estate, he is still a stranger, from the appointment of whom as administrator *" great inconveniences are likely to ensue,"* for remedy whereof the prior right of administraton is secured to the next of kin. Whatever ambiguity there may be about section 27, section 33 was enacted at the same time and is explanatory of it, and clearly defines the position of the

guardian in accordance with reason and the spirit of the statute.

That section 33 is, " If any person who would otherwise be entitled to letters of administration *as next of kin,* shall be a minor, such letters shall be granted to his guardian, being in all respects competent, *in preference to creditors* or other persons."

The words " or other persons," as used in this section have received judicial construction. Their meaning is clearly and satisfactorily defined in *Wickiwire* agt. *Chapman,* (15 *Barb.* 302, 304,) *and Cluett* agt. *Mattice,* (43 *Barb.,* 417,) *to be persons not entitled to share in the estate.*

The respondent applied in the capacity of guardian of a minor who would otherwise have been entiled to letters of administraton as " next of kin" and his degree of preference is defined by section 33, and thereby he simply outranks " creditors," &c.

*Expressio unius est exclusio alterius,* is a maxim in the construction of statutes. (STORY, *J.* 3 *Story's R.* 87 89.)

And the maxim is peculiarly applicable to a case like this where the statute confers a right which never before existed, and where an extension of the interpretation beyond the express words of the statute would contravene the general policy of the law.

The appellant applied as the *daughter* or *child* of the intestate for letters in her own right, and her degree of preference is defined by § 27, and thereby she outranks every person except the *widow.*

The policy of our law does not favor administration by strangers. ( *Goods of Williams, Tucker's Surrogates Rep. p.* 8 ; *A relative who has no interest, is a stranger, Daytons Surrogate,* 235.)

The policy of the system of administration is to commit administration to the person having the greatest interest in the estate. (8 *Gill and J.* 79, 85 ; 1 *Brad. Surrog. R.,* 495 ; 2 *R. S. Chap.* 6 *Title* 2, *Art. 1,* § 14.)

In support of the general policy of the statute it may be well to bear in mind that it is the general experience of mankind that nobody is so competent to take care of property as the owner, and one of the chief rights of property is the right to its control and possession, and the appointment of a stranger to the control of an estate over a competent person largely interested therein, not only contravenes the manifest scope and spirit of the statute, but impairs the most essential rights of property and is repugnant to natural justice, and may be well stigmatized as "practices from which great inconveniences are likely to ensue."

And history is full of the "inconveniences" which have ensued to peoples and estates from ambitious or avaricious persons setting up claims to control estates, or rule nations, under the shadow of the names of children or minors.

It is a lamentable spectacle, an orphan brother and sister, and a contest over the administration of their estate. But the sister's controversy is not with her brother. She is battling to rescue her brother as well as their estate from pernicious control. Her struggle is with strangers who usurp her rights, grasped her property and sought to rob her of the affection of her brother.

And one of the "inconveniences likely to ensue" from granting administrations to strangers who can control a minor, is the inevitable sundering of family ties, which the strangers must accomplish before they can place themselves in a position to contest the right of the adult member of the family.

It is the experience of courts that guardianships are frequently sought as a means of obtaining administration, and in such cases, in addition to the usual inconveniences ensuing from administrations by strangers, we shall have the family ties sundered by the strangers, and it is not often that such ties will be broken by honorable means, nor for justifiable purposes, nor by worthy persons.

Cottle agt. Vanderheyden.

The clear reading of the statute is in harmony with the general policy of the law which prefers next of kin to strangers, and those who are entitled to share in the estate to those who are not, and the relatives mentioned in § 27 are entitled to preference over persons applying as guardians, who are practically strangers.

The contrary of these propositions was decided by the surrogate, and his decree should be reversed with costs to be paid by the respondent, and letters should be directed to be issued to the appellant upon her petition and bond now on file with the surrogate.

ARPHAXAD LOOMIS, *for respondent.*

*By the court.*—The order of the surrogate is reversed on the ground that, by the statute prescribing the order in which the next of kin of an intestate shall be entitled to letters of administration, adult daughters are entitled in preference to the guardians of minor sons.

*Sec. 27, 3 R. S., 5th ed., p. 158,* prescribes the order in which next of kin shall be entitled to letters of administration in cases of intestacy. It is provided by § 28 that, in determining who, of a class, shall be preferred, that males shall be preferred to females.

This general provision is controlled by § 32, which declares that letters shall not be granted to minors.

By § 27 it is declared that if any of the several classes mentioned therein be minors, letters shall issue to their guardians. If none of the relatives of the intestate, or guardians of minors, will accept, then letters are to issue to the creditors of the intestate.

It is quite obvious that guardians are not to be appointed in the same cases in which their wards would be entitled if of full age.

If that had been the intention of the legislature, it would

Cottle agt. Vanderheyden.

not have provided that guardians should be entitled after relatives and before creditors.

Independent of the statute, it would seem to us to be most judicious that guardians should only be entitled in the event there is no adult relative who is competent. (*Wickwire* agt. *Chapman*, 15 *Barb.*, 302.)

The order of the surrogate is reversed with costs.